United States Bankruptcy Court
Southern District of Texas
**ENTERED**
October 04, 2023
Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HERITAGE POWER, LLC, *et al.*,[1] | ) | Case No. 23-90032 (CML) |
| | ) | |
| Debtors. | ) | Jointly Administered |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING CONFIRMATION OF THE FIRST AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF HERITAGE POWER, LLC, *ET AL.***

On October 4, 2023, the Court conducted a hearing (the "Confirmation Hearing") to consider confirmation of the *First Amended Joint Chapter 11 Plan of Reorganization of Heritage Power, LLC, et al.,* dated September 30, 2023 [Docket No. 544] (the "Plan"), filed by Heritage Power, LLC and its debtor affiliates, as debtors and debtors in possession (collectively, the "Debtors").[2] As referred to herein, the "Plan" shall be the Plan attached as **Exhibit A** to the *Order Confirming the First Amended Joint Chapter 11 Plan of Reorganization of Heritage Power, LLC, et al.* (the "Confirmation Order"). After considering the evidence presented, including the *Declaration of David Freysinger in Support of (A) Confirmation of the First Amended Joint Chapter 11 Plan of Reorganization of Heritage Power, LLC, et al.; and (B) Debtors' Emergency Motion for Entry of an Order: (I) Authorizing the Debtors to (A) Enter into the Macquarie Engagement Letter, (B) Incur and Pay Related Fees, Indemnities, and expenses, and (II) Granting*

1 The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Heritage Power, LLC (9775); Blossburg Power, LLC (3538); Brunot Island Power, LLC (8482); Gilbert Power, LLC (2872); Hamilton Power, LLC (6256); Heritage Power Intermediate Holdings, LLC (8767); Heritage Power Marketing, LLC (3891); Hunterstown Power, LLC (4065); Mountain Power, LLC (6709); New Castle Power, LLC (8606); Niles Power, LLC (6766); Orrtanna Power, LLC (8863); Portland Power, LLC (3465); Sayreville Power, LLC (6167); Shawnee Power, LLC (3714); Shawville Power, LLC (8264); Titus Power, LLC (6547); Tolna Power, LLC (8431); and Warren Generation, LLC (8699). The location of the Debtors' service address is: 1360 Post Oak Blvd., Suite 2000, Houston, TX 77056.

2 Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan.

*Related Relief*, dated October 2, 2023 [Docket No. 548] (the "Freysinger Declaration"), the *Declaration of Landon Kenworthy in Support of Confirmation of the First Amended Joint Chapter 11 Plan of Reorganization of Heritage Power, LLC, et al.*, dated October 2, 2023 [Docket No. 550] (the "Kenworthy Declaration"), the *Declaration of Aaron J. Stai in Support of Confirmation of the First Amended Joint Chapter 11 Plan of Reorganization of Heritage Power, LLC, et al.*, dated October 2, 2023 [Docket No. 549] (the "Stai Declaration"), the *Declaration of Stephenie Kjontvedt of Epiq Corporate Restructuring, LLC Regarding the Solicitation and Tabulation of Ballots Cast on the First Amended Joint Chapter 11 Plan of Reorganization of Heritage Power, LLC, et al.* [Docket No. 551] (the "Ballot Certification"), the arguments of counsel for the Debtors and other parties in interest, and the entire record in the Chapter 11 Cases (defined below), the Court makes the following Findings of Fact and Conclusions of Law:

1. The findings and conclusions set forth herein and in the record of the Confirmation Hearing constitute the Court's findings of fact and conclusions of law under rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"). To the extent any of the following conclusions of law constitute findings of fact, or vice versa, they are adopted as such.

## FINDINGS OF FACT

### A. Introduction

2. On July 17, 2023, the Debtors filed the Plan. Also on July 17, 2023, the Debtors filed the *Disclosure Statement for Joint Chapter 11 Plan of Reorganization of Heritage Power, LLC, et al.,* [Docket No. 377] (as amended, the "Disclosure Statement"). Amended versions of the Disclosure Statement were filed on August 18, 2023 [Docket No. 429] and on August 21, 2023 [Docket No. 452]. These Findings of Fact and Conclusions of Law are made with respect to confirmation of the Plan.

**B. Jurisdiction and Venue**

3. The Court has jurisdiction over this matter under 28 U.S.C. § 1334. Confirmation of the Plan is a core matter under 28 U.S.C. § 157(b). Venue is proper in the Court under 28 U.S.C. §§ 1408 and 1409.

**C. Eligibility for Relief**

4. The Debtors were and continue to be eligible for relief under section 109 of title 11 of the United States Code (the "Bankruptcy Code").

**D. The Chapter 11 Cases**

5. On January 24, 2023 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under the Bankruptcy Code, thereby commencing the above-captioned chapter 11 cases jointly administered under Case No. 23-90032 (CML) (the "Chapter 11 Cases").

6. The Debtors have been operating their businesses and managing their financial affairs as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in the Chapter 11 Cases, and no committees have been appointed or designated.

**E. The Solicitation Materials and Related Matters**

7. On July 17, 2023, the Debtors also filed the *Debtors Motion for Entry of an Order (I) Approving the Adequacy of the Disclosure Statement, (II) Approving the Solicitation, Voting, and Tabulation Procedures, (III) Approving the Forms of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, (V) Approving Assumption Notice and Assumed Contract Objection Procedures, and (VI) Granting Related Relief* [Docket No. 378] (the "Disclosure Statement Motion").

8. On July 24, 2023, the Debtors filed the *Debtors' Motion for Entry of an Order: (I) Authorizing Entry into the Backstop Commitment Letter; (II) Approving the Payment of Fees*



4882-8979-8784

*and Expenses Related Thereto; and (III) Granting Related Relief* [Docket No. 406] (the "Backstop Motion").

9. On August 22, 2023, the Court entered orders approving the Backstop Motion [Docket No. 469] (the "Backstop Order") and the Disclosure Statement Motion [Docket No. 468] (the "Disclosure Statement Order").

10. On September 27, 2023, the Debtors filed the *Debtors' Emergency Motion for Entry of an Order (I) Authorizing the Debtors to (A) Enter Into the Macquarie Engagement Letter, (B) Incur and Pay Related Fees, Indemnities, and Expenses, and (II) Granting Related Relief* [Docket No. 538] (the "New L/C Facility Motion").

11. On October 4, 2023, the Court entered an order approving the New L/C Facility Motion.

12. Pursuant to the Disclosure Statement Order, the Court (a) established certain solicitation and voting procedures (the "Solicitation Procedures"); (b) established notice and objection procedures with respect to the hearing to consider confirmation of the Plan; (c) established certain procedures regarding the assumption and rejection of executory contracts and unexpired leases; (d) established September 25, 2023 at 4:00 p.m. prevailing Central Time as the voting deadline and the deadline to object to confirmation of the Plan including the assumption of executory contracts and unexpired leases (the "Confirmation Objection Deadline"); and (e) scheduled the Confirmation Hearing.

13. In accordance with the Disclosure Statement Order, the Debtors commenced solicitation of votes on the Plan and transmitted or caused one or more of the following materials, as applicable, to be transmitted to holders of Claims or Interests in accordance with the Disclosure Statement Order: (i) the Disclosure Statement Order; (ii) the Disclosure Statement (and exhibits

thereto, including the Plan); (iii) a Ballot; (iv) a copy of the Solicitation Procedures; (v) the Confirmation Hearing Notice; (vi) a pre-addressed, postage pre paid reply envelop; (vii) a notice of non-voting status (the "Non-Voting Opt-out Form") that included, among other things, an opportunity to opt-out of the Third Party Releases (as defined below) in the Plan (collectively (i)–(vii), the "Solicitation Materials").

14. On August 28, 2023, the Debtors, through their solicitation agent, Epiq Corporate Restructuring, LLC ("Epiq"), caused the Solicitation Materials to be transmitted and served in compliance with the Bankruptcy Code, the Bankruptcy Rules, the *Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas* (the "Bankruptcy Local Rules"), and the Disclosure Statement Order. In particular, the applicable Solicitation Materials were transmitted to and served on holders of Claims or Interests in each Class under the Plan pursuant to the Solicitation Procedures to the extent there were holders of Claims in each such Class as established by the *Certificate of Service of Solicitation Documents* [Docket No. 484] (the "Solicitation Certification").

15. The Debtors formulated the Plan in good faith and solicited acceptances thereon pursuant to, and in accordance with, the Disclosure Statement Order and the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules. The Plan has been solicited in good faith, and the Debtors are entitled to the full protections afforded under section 1125(e) of the Bankruptcy Code.

16. On September 20, 2023, the Debtors filed a supplement to the Plan [Docket No. 521], which was further supplemented on October 2, 2023 [Docket No. 561] (collectively and as amended, supplemented, restated, or modified from time to time, the "Plan Supplement"). The materials contained in the Plan Supplement comply with the terms of the Plan, and the filing and

notice of such documents was good and proper in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and the Disclosure Statement Order, and no other or further notice is or shall be required. The documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan.

17. Epiq filed the Solicitation Certification evidencing service of the Solicitation Materials on holders of Claims and Interests entitled to service under the Disclosure Statement Order. In addition, on August 28, 2023, Epiq served the Cure Notice (defined below) to all parties to any Executory Contracts or Unexpired Leases on the non-Debtor counterparties to the Debtors' Executory Contracts and Unexpired Leases. *See* Exhibit 12 of Solicitation Certification.

18. The Debtors are conclusively determined to have provided all holders of Claims and Interests and parties-in-interest, whose names and addresses were known to the Debtors, with adequate and sufficient notice of the foregoing. The notice provided by the Debtors is adequate under the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and the Disclosure Statement Order; and such notice did apprise the parties receiving same of the Plan, the information and deadlines in the Disclosure Statement Order, the Confirmation Objection Deadline, the deadline for filing objections to the Debtors' assumption of any Executory Contract or Unexpired Lease, and of the Confirmation Hearing.

## F. Impairment of Claims and Results of Voting on the Plan

19. Claims in Class 1 (Other Secured Claims), Class 2 (Other Priority Claims), and Class 4 (Convenience Claims) are Unimpaired under the Plan. Under section 1126(f) of the Bankruptcy Code, holders of Claims in these Classes are conclusively presumed to have accepted the Plan. Accordingly, holders of Claims in these Classes are not entitled to vote on the Plan.

20. Claims and Interests in Class 6 (Intercompany Claims) and Class 8 (Intercompany Interests) shall be, at the option of the Debtors, with the consent of the Required Consenting

Creditors, either Unimpaired under the Plan or their holders will neither receive nor retain any property on account of such Claims or Interests, as applicable, under the Plan. Holders of Claims and Interests in these Classes are therefore conclusively presumed to have either accepted or rejected the Plan. Accordingly, holders of Claims and Interests in Class 6 (Intercompany Claims) and Class 8 (Intercompany Interests) are not entitled to vote on the Plan.

21. Claims or Interests in Class 7 (Subordinated Claims) and Class 9 (Existing Equity Interests) are Impaired and holders thereof shall neither receive nor retain any property on account of such Claims or Interests, as applicable, under the Plan. Under section 1126(g) of the Bankruptcy Code, holders of Claims and Interests in these Classes are conclusively presumed to have rejected the Plan and are not entitled to vote on the Plan. To the extent that a Class does not have a holder of an Allowed Claim or Interest, such Class is deemed eliminated from the Plan.

22. Claims in Class 3 (First Lien Secured Claims) and Class 5 (General Unsecured Claims) are Impaired and holders thereof are entitled to a distribution under the Plan to the extent such Claims are Allowed Claims. Accordingly, holders of Claims in Class 3 (First Lien Secured Claims) and Class 5 (General Unsecured Claims) are entitled to vote on the Plan.

23. On October 2, 2023, Epiq filed the Ballot Certification. The voting results contained in the Ballot Certification are incorporated herein by reference and are adopted by the Court as its findings of fact.

- Holders of Claims in Class 3 (First Lien Secured Claims) and Class 5 (General Unsecured Claims) voted overwhelmingly in favor of the Plan as to each of the Debtors.

- **Class 3 (First Lien Secured Claims)**.

  - **99.42%** in number (*i.e.*, **171** creditors) and **96.20%** in amount (*i.e.*, representing **$295,120,080.54** in Claims) of voting creditors in Class 3 (First Lien Secured Claims) voted to accept the Plan as to each of Heritage Power, LLC; Blossburg Power, LLC; Brunot Island Power, LLC; Gilbert

Power, LLC; Hamilton Power, LLC; Heritage Power Intermediate Holdings, LLC; Hunterstown Power, LLC; Mountain Power, LLC; New Castle Power, LLC; Niles Power, LLC; Orrtanna Power, LLC; Portland Power, LLC; Sayreville Power, LLC; Shawnee Power, LLC; Shawville Power, LLC; Titus Power, LLC; Tolna Power, LLC; and Warren Generation, LLC.

  - **99.42%** in number (*i.e.* **172** creditors) and **96.79%** in amount (*i.e.*, representing **$350,907,193.88** in Claims) of voting creditors in Class 3 (First Lien Secured Claims) voted to accept the Plan as to Heritage Power Marketing, LLC.
  - Accordingly, Class 3 for each of the Debtors has voted overwhelmingly to accept the Plan.

- **Class 5 (General Unsecured Claims)**.
  - **99.41%** in number (*i.e.*, **169** creditors) and **95.04%** in amount (*i.e.*, representing **$206,913,362.98** in Claims) of voting creditors in Class 5 (General Unsecured Claims) voted to accept the Plan as to each of Heritage Power, LLC; Blossburg Power, LLC; Brunot Island Power, LLC; Gilbert Power, LLC; Hamilton Power, LLC; Heritage Power Intermediate Holdings, LLC; Hunterstown Power, LLC; Mountain Power, LLC; New Castle Power, LLC; Niles Power, LLC; Orrtanna Power, LLC; Portland Power, LLC; Sayreville Power, LLC; Shawnee Power, LLC; Shawville Power, LLC; Titus Power, LLC; Tolna Power, LLC; and Warren Generation, LLC.
  - **99.42%** in number (*i.e.* **170** creditors) and **95.90%** in amount (*i.e.*, representing **$252,329,888.64** in Claims) of voting creditors in Class 5 (General Unsecured Claims) voted to accept the Plan as to Heritage Power Marketing, LLC.
  - Accordingly, Class 5 for each of the Debtors has voted overwhelmingly to accept the Plan.

24. Epiq examined each Ballot and each Non-Voting Opt-out Form to determine which parties opted out of the Third Party Releases. Jefferies Finance LLC affirmatively elected to opt out of the Third Party Release on the Ballot submitted to Epiq. Pension Benefit Guaranty Corporation affirmatively elected to opt out of the Third Party Release on the Non-Voting Opt-out Form submitted to Epiq.

25. Additionally, Epiq determined that three parties, Sequoia Investment Management Company, GDA Luma, and Indeck Power Equipment Company, submitted Class 5 Ballots in which such parties elected to reduce the Allowed amount of their respective Class 5 General Unsecured Claims to the Convenience Claim Threshold Amount and receive the Convenience Claim treatment set forth in Article II.C.4 of the Plan.

26. The classification and treatment of Claims and Interests in the Plan comply with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules, including sections 1122, 1123, and 1129 of the Bankruptcy Code, and are reasonable and appropriate.

## G. Informal Comments, Objections to Confirmation of the Plan and Disposition Thereof

27. Pursuant to the Disclosure Statement Order, the Court established the Confirmation Objection Deadline as September 25, 2023 at 4:00 pm prevailing Central Time. Prior to the Confirmation Objection Deadline, one objection to the Plan was filed: *Eastern Gas Transmission and Storage, Inc.'s Limited Objection to Debtors' Joint Chapter 11 Plan of Reorganization* [Docket No. 529] (the "EGTS Objection").

28. The Debtors negotiated resolution of the EGTS Objection, which resolution was implemented through agreed language in the Confirmation Order.

29. Additionally, the Debtors received informal comments to the Plan and/or Plan Supplement from the following parties: (i) Pennsylvania Department of Environmental Protection; (ii) the Department of Justice; (iii) J. Aron & Company LLC; (iv) Macquarie Bank Limited; (v) Jefferies Finance LLC; (vi) the Ad Hoc Committee; (vii) National Fuel Gas Distribution Corporation; (viii) PJM Interconnection, L.L.C. and PJM Settlement, Inc.; and (ix) GenOn (collectively, the "Informal Comments").

30. The Debtors negotiated resolutions of the Informal Comments, which resolutions were implemented through agreed language in the Confirmation Order or the Plan Supplement.

31. On September 26, 2023, the Debtors filed the *Notice of Filing of PJM Settlement Term Sheet* [Docket No. 536] (the "PJM Settlement Notice"). Attached to the PJM Settlement Notice as Exhibit A is the PJM Settlement Term Sheet dated as of September 26, 2023, by and among the Debtors (with the consent of the Required Consenting Creditors in accordance with the terms of the Restructuring Support Agreement), PJM Interconnection, L.L.C. and PJM Settlement, Inc. (the "PJM Settlement Term Sheet"). The Court finds that the settlement terms in the PJM Settlement Term Sheet are in the best interests of the Debtors and their Estates and are fair, equitable and reasonable.

32. Pursuant to and in compliance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Debtors proposed certain modifications to the Plan as reflected herein and/or in modified or amended versions of the Plan and Plan Supplement filed with the Court prior to entry of the Confirmation Order (collectively, the "Plan Modifications"). In accordance with Bankruptcy Rule 3019, the Plan Modifications do not: (i) constitute material modifications of the Plan under section 1127 of the Bankruptcy Code; (ii) require additional disclosure under section 1125 of the Bankruptcy Code; (iii) cause the Plan to fail to meet the requirements of sections 1122 or 1123 of the Bankruptcy Code; (iv) materially and adversely change the treatment of any Claims or Interests; (v) require re-solicitation of votes of any holders of Claims or Interests; or (vi) require that any such holders of Claims or Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan. Under the circumstances, the form and manner of notice of the proposed Plan Modifications are adequate, and no other or further notice of the proposed Plan Modifications is necessary or required. In accordance with section 1127 of the Bankruptcy Code

and Bankruptcy Rule 3019, all holders of Claims or Interests who voted to accept the Plan or who are conclusively presumed to have accepted the Plan are deemed to have accepted the Plan as modified by the Plan Modifications. No holder of a Claim or Interest that has voted to accept the Plan shall be permitted to change its acceptance to a rejection as a consequence of the Plan Modifications.

**H. <u>The Confirmation Hearing</u>**

33. On or before August 28, 2023, the Debtors caused the Confirmation Hearing Notice to be mailed to (a) all known holders of Claims, (b) all known holders of Interests, and (c) all other parties in interest, in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and the Disclosure Statement Order. The Debtors published a notice substantially similar to the Confirmation Hearing Notice in the national edition of *USA TODAY* on August 28, 2023 and Epiq filed the *Verification of Publication* [Docket No. 477] on August 29, 2023. The Debtors have given proper, adequate, and sufficient notice of the Plan, the Confirmation Hearing, and the deadlines for filing objections to and voting on the Plan as required by the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and the Disclosure Statement Order to all known and unknown holders of Claims or Interests and all parties in interest. No other or further notice was or shall be required.

34. The Court conducted the Confirmation Hearing on October 4, 2023 at 2:00 p.m. (Central Time).

**I. Release and Exculpation**

35. The Plan contemplates various releases and exculpations for the Released Parties. The releases and exculpations are essential and integral components of the Plan and the compromises and settlements contained therein.

36. The Debtors' management, as well as the Debtors' attorneys, advisors, and other professionals have played an integral role in, and have provided a tangible benefit to, the Debtors' restructuring efforts. These parties have worked diligently (both before and after the Petition Date) in connection with the Debtors' restructuring efforts. The Debtors' management, with the assistance of the Debtors' attorneys, advisors and other professionals: (a) assisted in efforts to prepare for the Debtors' Chapter 11 Cases; (b) assisted in the negotiation and formulation of the Disclosure Statement and Plan and the negotiation and consummation of the Backstop Agreement and other Definitive Documents; and (c) responded to myriad issues that arose during the restructuring process and the Chapter 11 Cases.

37. The Backstop Parties, GenOn, and the Consenting Creditors played an active role in the Debtors' restructuring efforts and contributed significantly to the Chapter 11 Cases. Among other contributions, the Consenting Creditors gave concessions that made it possible to fund the Chapter 11 Cases through the use of cash collateral; GenOn provided transition and management services throughout the Chapter 11 Cases; and the Backstop Parties backstopped the participation of the Exit Facility, which ensured that the Debtors would have the financing necessary to fund the Restructuring Transactions and emergence from bankruptcy. In addition, the Backstop Parties, GenOn, and the Consenting Creditors assisted in the negotiation, formulation, and, in certain instances, consummation of the Definitive Documents and have helped to resolve numerous issues that arose during the restructuring process and the Chapter 11 Cases. Without the contributions of

these parties, the Debtors would not have been able to continue to operate in the ordinary course of business or successfully formulate the Plan and provide for the Distributions thereunder.

38. Each of the parties receiving a release or exculpation under the Plan has participated in the Chapter 11 Cases and the Debtors' restructurings in good faith and has acted in compliance with all provisions of the Bankruptcy Code, including in connection with the negotiation, preparation, and pursuit of confirmation of the Plan and the other Definitive Documents.

39. The Court has jurisdiction under sections 1334 of title 28 of the United States Code and authority under section 105 of the Bankruptcy Code to approve the injunctions, releases, and exculpations set forth in Article X of the Plan. As has been established based on the record in the Chapter 11 Cases and the evidence presented at the Confirmation Hearing, such provisions (i) are the product of extensive good faith, arm's length negotiations, (ii) are an essential and integral component of the terms of the Plan, and (iii) are supported by the Debtors and their key stakeholders, including the Backstop Parties, the Consenting Creditors, and GenOn.

40. The release provision in Article X.E.1 of the Plan (Releases by the Debtors) is appropriate, as it represents a valid exercise of the Debtors' business judgment. The release provisions in Articles X.E.2 of the Plan (Releases by Holders of Claims and Interests) (the "Third Party Releases") are appropriate, as the releases contained therein are consensual and supported by the rationale outlined above. The Third Party Releases: (a) are supported by good and valuable consideration provided by the Released Parties; (b) represent a good-faith settlement and compromise of the various claims, Causes of Action and contested issues raised by the Chapter 11 Cases; (c) materially beneficial to, and in the best interests of, the Debtors, their Estates, and their stakeholders, and important to the overall objectives of the Plan to finally resolve disputed issues among or against certain parties in interest in these Chapter 11 Cases; (d) are fair, equitable, and

reasonable; (e) are given and made after due notice and opportunity for hearing; and (f) are consistent with the Bankruptcy Code. The Third Party Releases are an essential and integral part of the Plan, and were a core negotiation point in developing the Plan that kept the Debtors intact as a going concern and maximized value for all of the Debtors' stakeholders. The Third Party Releases appropriately offer certain protections to parties who constructively participated in the Debtors' restructuring process. The Third Party Releases were conspicuously disclosed in boldface type in the Plan, the Disclosure Statement, and on the Ballots, which provided parties in interest with sufficient notice of the same. The exculpation provided in Article X.D of the Plan is appropriate under applicable law, was proposed in good faith, is an integral component of the Plan, and is appropriately limited in scope.

41. The record of the Confirmation Hearing and these Chapter 11 Cases is sufficient to support the injunctions, releases, and exculpations provided for in the Plan. Accordingly, based upon the record of these Chapter 11 Cases, the representations of the parties, and the evidence proffered, adduced, and/or presented at the Confirmation Hearing, the injunctions, exculpation, and releases set forth in Article X of the Plan are consistent with the Bankruptcy Code and applicable law and are approved.

**J. <u>Means for Implementation of the Plan</u>**

42. The Restructuring Transactions are necessary and appropriate to effectuate the restructuring provided for in the Plan, including, without limitation, issuance of New Equity Interests, entry and performance under the Exit Facility, entry and performance under the New L/C Facility, and the Shawville Lease Documents Amendments.

43. The Exit Facility and the New L/C Facility were offered and negotiated in good faith. The Debtors exercised reasonable business judgment in negotiating and accepting the terms of the Exit Facility and the New L/C Facility.

**K. Executory Contracts and Unexpired Leases**

44. Article V of the Plan provides that as of and subject to the occurrence of the Effective Date, all Executory Contracts and Unexpired Leases shall be deemed assumed, together with all amendments agreed to in writing between the Debtor(s) and the Executory Contract or Unexpired Lease counterparty, unless such Executory Contract or Unexpired Lease (i) was previously assumed or rejected pursuant to a Final Order of this Court, (ii) is listed on the Rejection Schedule or (iii) is the subject of a motion filed by a Debtor for assumption or rejection under section 365 of the Bankruptcy Code that is pending before this Court or subject to a pending appeal.

45. In accordance with the Disclosure Statement Order, on August 23, 2023, the Debtors filed the *Notice of Cure Claims Associated with Executory Contracts and Unexpired Leases that May be Assumed by the Debtors Pursuant to the Plan and Related Procedures in Connection Therewith* [Docket No. 473] (the "Cure Notice"), identifying the cure amounts, if any, for the Executory Contracts and Unexpired Leases to be assumed under the Plan. The Cure Notice was properly served on the relevant contract counterparties, as established by the Solicitation Certification. Consistent with the Cure Notice, the cure amount is deemed to be $0.00 for all Executory Contracts and Unexpired Leases that are not listed in the Cure Notice.

46. On September 20, 2023, the Debtors filed the Rejection Schedule as part of the Plan Supplement that identified Executory Contracts and Unexpired Leases, if any, that the Debtors intend to reject pursuant to Article V of the Plan.

47. Pursuant to the Disclosure Statement Order, the Court established the Confirmation Objection Deadline as the deadline for filing objections to the Debtors' assumption of any Executory Contract or Unexpired Lease. Prior to the Confirmation Objection Deadline, Recycle the World, Inc. filed *Recycle the World, Inc.'s Objection to Notice of Cure Claims Associated with Executory Contracts and Unexpired Leases that may be Assumed by the Debtors Pursuant to the*

*Plan and Related Procedures in Connection therewith and Objection to Plan* [Docket No. 531] (the "Cure Objection").

48. The Cure Objection shall be resolved as set forth in the Confirmation Order. The Cure Claim with respect to the Unexpired Lease between the Debtors and Recycle the World, Inc. shall be no greater than $39,101.62.

49. Additionally, the Debtors received informal comments regarding the cure amount required for the Debtors to assume certain Executory Contracts or Unexpired Leases from the following parties: (i) National Fuel Gas Distribution Corp; and (ii) PJM Interconnection, L.L.C. and PJM Settlement, Inc. (collectively, the "Cure Comments").

50. As described in the Confirmation Order, the Debtors have either (i) agreed with the cure amounts asserted in the respective Cure Comments, or (ii) otherwise resolved or addressed the respective Cure Comments.

51. Pursuant to Article V.A of the Plan. the Debtors reserved the right to alter, amend, modify, or supplement the Rejection Schedule at any time until the Effective Date and the Reorganized Debtors shall have the right to alter, amend, modify, or supplement the Rejection Schedule at any time from the Effective Date through and including 45 days after the Effective Date.

52. The Debtors have exercised reasonable business judgment in determining whether to assume or reject Executory Contracts and Unexpired Leases pursuant to Article V of the Plan. Each assumption of an Executory Contract or Unexpired Lease pursuant to Article V of the Plan shall be legal, valid, and binding upon the Debtors or Reorganized Debtors and their successors and assigns and all non-Debtor counterparties and their successors and assigns to such Executory Contract or Unexpired Lease, all to the same extent as if such assumption was effectuated pursuant

to an order of the Bankruptcy Court under section 365 of the Bankruptcy Code entered before entry of this Order. Moreover, the Debtors have cured, or provided adequate assurance that the Debtors or Reorganized Debtors or their successors and assigns, as applicable, will cure, defaults (if any) under or relating to each of the Executory Contracts and Unexpired Leases that are being assumed or assumed and assigned by the Debtors pursuant to the Plan. In addition, the Debtors or Reorganized Debtors or their successors and assigns, as applicable, are financially sound, and have provided adequate assurance of future performance under such Executory Contracts and Unexpired Leases being assumed or assumed and assigned, as applicable.

**L. Valuation**

53. The valuation analysis attached as Exhibit 5 to the Disclosure Statement, (the "Valuation Analysis"), the evidence adduced at the Confirmation Hearing, and the estimated post-emergence enterprise value of the Reorganized Debtors are reasonable and credible. All parties in interest have been given a fair and reasonable opportunity to challenge the Valuation Analysis. The Valuation Analysis is reasonable, persuasive, and credible as of the date such analysis was prepared, presented, or proffered and uses reasonable and appropriate methodologies and assumptions.

**M. New Board of Directors/Officers**

54. On September 20, 2023, the Debtors filed, as part of the Plan Supplement, a notice that identifies the number, identity, and affiliations of the Persons proposed to serve on the New Board to the extent known.

**N. Miscellaneous**

55. The Court's oral findings of fact on the record at the Confirmation Hearing are incorporated herein by reference.

56. The Court has taken judicial notice of all papers filed and all orders entered in the

Debtors' Chapter 11 Cases.

57. To the extent any objection to Confirmation of the Plan has not been withdrawn, it is overruled or is otherwise addressed in the Confirmation Order.

## CONCLUSIONS OF LAW

A. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(L). This matter arises under title 11, and jurisdiction is vested in this Court to enter a final order by virtue of 28 U.S.C. § 1334.

### Confirmation Requirements Concerning the Plan

**11 U.S.C. § 1129(a)(1) and (a)(2): Compliance with Title 11**

B. The classification of Claims and Interests described in the Plan satisfies the standards of section 1122 of the Bankruptcy Code. The Plan complies with the applicable provisions of the Bankruptcy Code, including section 1123 of the Bankruptcy Code. The requirements of section 1129(a)(1) of the Bankruptcy Code are therefore satisfied. The Debtors have complied with the terms of the Disclosure Statement Order, the Bankruptcy Rules, the Bankruptcy Local Rules, and the Bankruptcy Code. The requirements of section 1129(a)(2) of the Bankruptcy Code are therefore satisfied.

C. Specifically, the Plan, as required by section 1123 of the Bankruptcy Code:

- designates, subject to section 1122, Classes of Claims, other than Claims of a kind specified in sections 507(a)(1), 507(a)(2) or 507(a)(8), and Classes of Interests;
- specifies every Class of Claims or Interests that is not impaired under the Plan;
- specifies the treatment of any Class of Claims or Interests that is impaired under the Plan;
- provides the same treatment for each Claim or Interest of a particular Class, unless the holder of a particular Claim or Interest agrees to a less favorable treatment of such particular Claim or Interest;

- provides adequate means for the Plan's implementation;
- prohibits the issuance of non-voting equity securities pursuant to and only to the extent required by section 1123(a)(6) of the Bankruptcy Code, as will be set forth in a provision of the New Organizational Documents; and
- contains only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or trustee under the Plan and any successor to such officer, director, or trustee.

**11 U.S.C. § 1129(a)(3): Plan Proposed in Good Faith**

D. The Plan has been proposed in good faith and not by any means forbidden by law as required by section 1129(a)(3) of the Bankruptcy Code. The Debtors have proposed the Plan with the legitimate and honest purpose of reorganizing their financial affairs and making distributions to Creditors. The Plan has not been proposed by any means forbidden by law. The Plan fairly achieves a result consistent with the objectives and purposes of the Bankruptcy Code. The Plan is the result of good faith, arm's-length negotiations among the Debtors, the Backstop Parties, the Consenting Creditors, GenOn, and other parties in interest. The Plan has been proposed in good faith.

E. Accordingly, the Debtors are entitled to the protections afforded under section 1125(e) of the Bankruptcy Code.

**11 U.S.C. § 1129(a)(4): Disclosure and Approval of Payments**

F. Any payment made or to be made by the Debtors, for services or for costs and expenses in or in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the cases, has been approved by, or is subject to the approval of the Bankruptcy Court as reasonable, as required by section 1129(a)(4) of the Bankruptcy Code.

**11 U.S.C. § 1129(a)(5): Disclosure of Management and Payments to Insiders**

G. As required by section 1129(a)(5) of the Bankruptcy Code, the Debtors have disclosed the identities of any individuals proposed to serve on the boards of directors or managers, as applicable, and officers of the Reorganized Debtors after the Confirmation Date of the Plan and information about the directors' and officers' affiliations and constitutes adequate disclosure of such information.

H. The Debtors have disclosed the identity of any director, officer, or employee of the Reorganized Debtors that is an insider. The Debtors have disclosed the nature of any compensation to be paid to any such director, officer, or employee. Consequently, the Debtors have provided sufficient disclosure regarding the identity of any insiders that will be employed or retained by the Reorganized Debtors, and the nature of any compensation for such insiders.

**11 U.S.C. § 1129(a)(6): Regulatory Rate Approval**

I. The Plan does not provide for a "rate change" as contemplated by section 1129(a)(6) of the Bankruptcy Code, and therefore, section 1129(a)(6) does not apply to the Plan.

**11 U.S.C. § 1129(a)(7): Best Interest of Creditors Test**

J. The Debtors prepared a liquidation analysis (the "Liquidation Analysis") with respect to a hypothetical liquidation of the Debtors' assets under chapter 7 of the Bankruptcy Code. The Liquidation Analysis is attached as Exhibit 6 to the Disclosure Statement. The Court accepts the results of the Liquidation Analysis. Based on the Liquidation Analysis, with respect to each impaired Class of Claims or Interests, (a) each holder of a Claim or Interest of such Class has either accepted the Plan or (b) will receive or retain under the Plan on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that the holder would

so receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code. The requirements of 11 U.S.C. § 1129(a)(7) are therefore satisfied.

**11 U.S.C. § 1129(a)(8): Acceptance of Plan by All Classes**

K. Section 1129(a)(8) of the Bankruptcy Code requires that, with respect to each class of claims or interests, such class has either accepted the plan or is not impaired under the plan. Claims in Classes 1, 2, and 4 are not impaired and section 1129(a)(8) is satisfied with respect to those Classes. The two voting Classes (Classes 3 and 5) voted overwhelmingly in favor of the Plan and section 1129(a)(8) is satisfied with respect to such Classes. Class 7 (Subordinated Claims) does not have a holder of an Allowed Claim, and thus, is deemed eliminated from the Plan.[3]

L. To the extent Class 6 Intercompany Claims and Class 8 Intercompany Interests are Reinstated, they are Unimpaired and deemed to accept the Plan, and the requirements of section 1129(a)(8) of the Bankruptcy Code are satisfied. Conversely, to the extent Classes 6 and 8 are not Reinstated, the requirements of section 1129(a)(8) of the Bankruptcy Code are not satisfied as to Classes 6 and 8.

M. Holders of Interests in Class 9 (Existing Equity Interests) are conclusively presumed to have rejected the Plan and were not entitled to vote on the Plan; therefore, the requirements of section 1129(a)(8) of the Bankruptcy Code are not satisfied with respect to Class 9; however, the Plan meets the cramdown requirements of section 1129(b) of the Bankruptcy Code with respect to Class 9 because there are no Claims or Interests that are junior to the Interests in

[3] *See* paragraph 14 of the Disclosure Statement Order.

Class 9 that would receive a distribution or retain property and thus the Plan can be confirmed without complying with section 1129(a)(8).

**<u>11 U.S.C. § 1129(a)(9): Payment of Priority Claims</u>**

N. Section 1129(a)(9) of the Bankruptcy Code provides for the treatment of claims entitled to priority under sections 507(a)(l)-(8) of the Bankruptcy Code. Under section 1129(a)(9)(A) of the Bankruptcy Code, holders of section 507(a)(2) and (a)(3) claims must receive cash equal to the allowed amount of such claim. Section 1129(a)(9)(B) provides that, except to the extent the holder of a claim has otherwise agreed to a different treatment, holders of section 507(a)(1) and (a)(4)-(a)(7) claims must receive deferred cash payments of a value equal to the allowed amount of such claims if the class has accepted the Plan or, if not, cash equal to the allowed amount of such claim. Under Section II.A of the Plan, holders of Allowed Administrative Claims shall be paid an amount of Cash equal to the amount of their Allowed Administrative Claims, except as otherwise agreed to by the holder of an Allowed Administrative Claim and the Debtors or Reorganized Debtors, as applicable. Under Section II.C of the Plan, holders of Other Priority Claims will be paid in full in Cash or such other treatment as is consistent with the requirements of section 1129(a)(9) of the Bankruptcy Code, except to the extent that a holder of an Allowed Other Priority Unsecured Claim agrees to less favorable treatment. No holder of an Administrative Claim and no member of the Class of Other Priority Claims objected to this treatment proposed by the Plan. Accordingly, the Plan meets the requirements of sections 1129(a)(9)(A) and 1129(a)(9)(B) of the Bankruptcy Code.

O. Under section 1129(a)(9)(C) of the Bankruptcy Code, holders of claims under section 507(a)(8) or secured tax claims must receive regular installment payments in cash, (a) of a total value, as of the effective date of the plan, equal to the allowed amount of such claim; (b) over a period ending not later than 5 years after the date of the order for relief under sections 301, 302

or 303; and (iii) in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the Plan. Section II.A.1.a. of the Plan provides that Allowed Priority Tax Claims shall be treated in accordance with section 1129(a)(9)(C) of the Bankruptcy Code. Accordingly, the Plan meets the requirements of section 1129(a)(9)(C) of the Bankruptcy Code.

**11 U.S.C. § 1129(a)(10): At Least One Impaired Class Has Accepted the Plan**

P. Section 1129(a)(10) of the Bankruptcy Code provides that if one or more classes of claims is impaired under a plan, at least one class must have accepted the plan, without including any votes of insiders. Classes 3 and 5 are comprised of First Lien Secured Claims and General Unsecured Claims, respectively. Without including any acceptance of the Plan by any insider, Classes 3 and 5 voted to accept the Plan as to each of the Debtors. The Plan therefore satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.

**11 U.S.C. § 1129(a)(11): Feasibility**

Q. At the Confirmation Hearing, the Debtors offered the recovery analysis attached as Exhibit 2 to the Disclosure Statement, the financial projections attached as Exhibit 6 to the Disclosure Statement, and the Freysinger Declaration to demonstrate, among other things, the feasibility of the Plan. Based on the testimony and the supporting documentary evidence presented at the Confirmation Hearing, the Court finds that the financial projections prepared by the Debtors are reasonable. The financial projections indicate that the Debtors will be able to make all payments required under the Plan, and that confirmation of the Plan is not likely to be followed by liquidation or further need for financial restructuring by the Debtors. Therefore, the Plan is feasible and complies with section 1129(a)(11) of the Bankruptcy Code.

**11 U.S.C. § 1129(a)(12): Payment of Fees**

R. Article II.A.1.c of the Plan provides that, until the Chapter 11 Cases are closed, all fees incurred under 28 U.S.C. § 1930(a)(6) will be paid by each Debtor or Reorganized Debtor, as

applicable. Accordingly, the Plan complies with the requirements of section 1129(a)(12) of the Bankruptcy Code.

**11 U.S.C. § 1129(a)(13): Retiree Benefits**

S. The Debtors have no retiree benefit obligations, and therefore section 1129(a)(14) of the Bankruptcy Code is inapplicable.

**11 U.S.C. § 1129(a)(14): Domestic Support Obligations**

T. The Debtors are not required to pay a domestic support obligation, either under a judicial or administrative order or by statute, and therefore section 1129(a)(14) of the Bankruptcy Code is inapplicable.

**11 U.S.C. § 1129(a)(15): Objection to Plan Confirmation by a Holder of an Unsecured Claim**

U. The Debtors are not individuals, and therefore section 1129(a)(15) of the Bankruptcy Code is inapplicable.

**11 U.S.C. § 1129(a)(16): Restrictions on Transfers of Property by Nonprofit Entities**

V. Each of the Debtors are a moneyed, business, or commercial corporation or trust, and therefore section 1129(a)(16) of the Bankruptcy Code is inapplicable.

**11 U.S.C. § 1129(b)**

W. Under section 1129(b) of the Bankruptcy Code, the court "shall confirm the plan . . . if the plan does not discriminate unfairly, and it is fair and equitable, with respect to each class of claims or interest that is impaired under, and has not accepted, the plan." For purposes of section 1129(b) of the Bankruptcy Code, the Plan is fair and equitable to the extent that the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property. *See* 11 U.S.C. § 1129(b)(2)(B)(ii), (C)(ii).

X. To the extent any Classes are similarly situated, the Plan does not discriminate unfairly against any such Classes. Accordingly, the Plan satisfies section 1129(b)(1) of the Bankruptcy Code.

Y. There are no Claims or Interests that are junior to the Claims or Interests of any Impaired Class that has not accepted the Plan that would receive a distribution or retain property under the Plan. Accordingly, the Plan satisfies the absolute priority rule of section 1129(b)(2) of the Bankruptcy Code and is "fair and equitable" in all respects.

**11 U.S.C. § 1129(c)**

Z. The Plan is the only plan filed in the Chapter 11 Cases and, accordingly, satisfies section 1129(c) of the Bankruptcy Code.

**11 U.S.C. § 1129(d)**

AA. The primary purpose of the Plan is not avoidance of taxes or avoidance of the requirements of Section 5 of the Securities Act. Therefore, the Plan complies with section 1129(d) of the Bankruptcy Code.

**11 U.S.C. § 1129(e)**

BB. The Chapter 11 Cases are not small business cases and, accordingly, section 1129(e) of the Bankruptcy Code is inapplicable in the Chapter 11 Cases.

**Satisfaction of Confirmation Requirements**

CC. Based upon the foregoing and all other pleadings and evidence proffered or adduced at or prior to the Confirmation Hearing, the Debtors have satisfied their burden of proving by a preponderance of evidence that the Plan and the Debtors, as applicable, satisfy all the requirements for Confirmation set forth in section 1129 of the Bankruptcy Code.

**Other Provisions**

DD. The Court's oral conclusions of law on the record at the Confirmation Hearing are incorporated herein by reference.

EE. The record of the Confirmation Hearing is closed.

Signed: October 04, 2023

Christopher Lopez
United States Bankruptcy Judge



4882-8979-8784